UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD LARRISON,<br><br>              Plaintiff,<br><br>    v.<br><br>OCEAN BEAUTY SEAFOODS, LLC, et al.,<br><br>              Defendants. | Case No. C20-906-RSM<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This matter comes before the Court on Defendants Ocean Beauty Seafoods, LLC ("Ocean Beauty") and Retriever Tender Alaska, LLC ("RTA")'s Motion for Summary Judgment. Dkt. #42. Plaintiff Richard Larrison has filed an opposition. Dkt. #46. The Court has determined that it can rule without the need of oral argument. For the reasons set forth below, the Court GRANTS Defendants' Motion and dismisses the case.

## II.    BACKGROUND

### A. Procedural Background

Plaintiff Richard Larrison brought this lawsuit against Ocean Beauty, Mattsen Fisheries, Inc., Mattsen Management, LLC ("Mattsen Management), and RTA asserting causes of action for Jones Act negligence, unseaworthiness, maintenance and cure, and for breach of duties

ORDER - 1

under the Longshore & Harbor Worker's Compensation Act, 33 U.S.C. § 905(b) in the United State District Court for the District of Oregon for an injury sustained while working aboard a fishing vessel, the F/V Retriever, which is documented by the United States under official number 598975. Dkt. #34-1. At the time of Mr. Larrison's injury, Defendant RTA owned the vessel, which was managed under a Vessel Management Agreement by Mattsen Management. Dkt. #42 at 2. Defendant Ocean Beauty is the managing member of RTA. *Id.* According to Defendants, Mattsen Management paid Mr. Larrison's wages, insured the subject injury claims, and settled his worker's compensation claim arising from the incident underlying this litigation. Dkt #42 at 3 (citing Dkt. #43).

On April 6, 2020, Mr. Larrison voluntarily dismissed his claims against Defendant Mattsen Fisheries, Inc., with prejudice and without costs. Dkt. #18. On June 10, 2020, the Oregon District Court granted the parties' stipulation for transfer of venue and the case was transferred to this Court. Dkt. #21. After the case was transferred, Mr. Larrison and Mattsen Management reached a settlement and Mr. Larrison's claims against it were dismissed with prejudice. Dkt. #33. Now, Defendants Ocean Beauty and RTA remain.

**B. Mr. Larrison's Injury and Claims**

In December of 2016, the F/V Retriever was undergoing repairs and maintenance, overseen by Mattsen Management. Dkt. #42 at 2. Under the terms of the Vessel Management Agreement, Mattsen Management hired hourly employees to assist with shipyard repairs and maintenance before the vessel departed for tendering operations. *Id.* Mattsen Management employed the individuals directly, and according to Defendants no individual from Ocean Beauty or RTA had any involvement with the operations. *Id.* citing Dkt. #43 ¶ 4. One of these

ORDER - 2

employees was Plaintiff Larrison.  Dkt. #42 at 3 (citing Dkts. #43 and #44, Ex. 1 (Larrison W-2)).

In an email, Mr. Larrison described the December 19, 2016, incident underlying his claims.  Dkt. #44-2.  Mr. Larrison has not disputed the authenticity of this email.  *See generally,* Dkt. #46.  In the email, Mr. Larrison states he was hired by Mattsen Management for shipyard work on the F/V Retriever in advance of the 2017 cod fishing season.  Dkt. #44-2.  His work included board repair, repairing and loading gear and fixing machinery while the vessel was at the Ocean Beauty dock in Seattle.  *Id.*

The parties agree that on December 19, 2016, the F/V Retriever left the dock for sea trials.  Dkt. #42 at 3.  During the sea trials, while at the Covich-Williams fuel dock in Ballard, another Mattson Management employee instructed Larrison to manually move cod tendering equipment by hand and with a prybar.  Dkt. #44, Ex. 3, Deposition of Richard Larrison ("Larrison Dep.") at 36:1–10.  Later, when the vessel was back at the Ocean Beauty dock, the same employee instructed Mr. Larrison to move the cod tendering equipment by hand.  *Id.*

According to Mr. Larrison, the cod tendering equipment was moved by hand because the vessel's hydraulic crane was out of commission and locked out and tagged out.  Larrison Dep. at 30:25–32:7; 38:10–15.  Mr. Larrison contends he was instructed to move the equipment alone because the other employees aboard the vessel were engaged in other tasks.  *Id.* at 37:7–16 (describing full crew complement); Dkt. #44-2 (describing being undermanned).  When not completed with the crane, the task was accomplished by multiple men "shuffle[ing the equipment] around by hand."  Larrison Dep 36:6–7.

According to Mr. Larrison, after moving the equipment across the deck, he started experiencing shooting pain down his right leg.  Dkt. #44-2.  He alleges his neck and back were

ORDER - 3

ultimately injured. Dkt. #37. He returned home to Oregon on December 20, 2016, where he collected benefits under the Longshore and Harbor Worker's Compensation Act. Larrison Statement; Dkt. #44, Ex. 4 (LHWCA Employer Notice of Injury).

### III. LEGAL ANALYSIS

#### A. Legal Standard

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(e).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted. *Id.* at 249-50. It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. *Id.* Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

#### B. Jones Act, Unseaworthiness, and Maintenance and Cure Claims

ORDER - 4

Defendants argue that Mr. Larrison's claims for Jones Act negligence, unseaworthiness, and maintenance and cure are unavailable to him as a matter of law because he was not a seaman when the accident occurred. *See* Dkt. #42 at 5–9. The issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997). Nevertheless, "summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (citations and internal quotations omitted).

As Defendants correctly explain, all three claims require a finding that Mr. Larrison was a seaman. First, The Jones Act, 46 U.S.C. § 30104, applies only to "seam[e]n injured in the course of employment." The act does not cover "probable or expectant seamen," but only "seamen in being." *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 190–91 (1952). Second, "unseaworthiness" is also a remedy available only to seamen and members of a ship's crew. *Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312, 312 (5th Cir. 1990) (no unseaworthiness remedy "against a vessel on which he is not a crewmember"); *United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 616 (1959) (duty of seaworthiness is a "duty which the owner of a vessel owes to the members of the crew who man her"). Third, maintenance, cure, and unearned wages are similarly available only to seamen. *See*, *e.g.*, *Whitman v. Miles*, 387 F.3d 68, 71–72 (1st Cir. 2004) ("The right to maintenance and cure applies only to 'seamen' who are injured or fall ill while 'in service of the ship.'"); *Williamson v. W.-Pac. Dredging Corp.*, 304 F. Supp. 509, 514 (D. Or. 1969), *aff'd*, 441 F.2d 65 (9th Cir. 1971) (to recover for maintenance and cure, "plaintiff must establish that her husband, at the time of the fatal injury, was a seaman acting within the service of his ship"); *see also Lara v. Arctic King Ltd.*, 178 F. Supp. 2d 1178, 1179 (W.D. Wash. 2001) ("This is a

ORDER - 5

suit for damages brought under the… 'Jones Act'… and the general maritime law concept of 'unseaworthiness'… Plaintiff also brings claims related to the traditional seaman's benefits of maintenance, cure and unearned wages. The initial prerequisite for recovery on any of plaintiff's claims in this matter is that plaintiff was a 'seaman' at the time of his accident."). Punitive damages for the "willful and wanton disregard of the maintenance and cure obligation" are also tethered to seaman status, as only seamen are entitled to maintenance, cure, and unearned wages. *Atlantic Sounding Co. v. Townsend*. 557 U.S. 404, 424 (2009).

"[A] plaintiff's status as a seaman is determined at the time of his injury." *Petersen v. Chesapeake & Ohio Ry. Co.*, 784 F.2d 732, 739 (6th Cir. 1986) (*citing Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1345 (5th Cir. 1980)); *Gizoni v. Sw. Marine Inc.*, 909 F.2d 385, 389 (9th Cir. 1990) (applying *Petersen* in drawing distinction between seamen and longshoremen); *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 453 (5th Cir. 1980) ("the employee must be a seaman at the time his claim arises; the fact that he was once a seaman and that either he or his employer intend some day for him again to become one do not suffice").

Defendants argue that Mr. Larrison was at most a probable or expectant seaman at the time of his injury because he was not employed as a crew member on a fish tender vessel, but at all relevant times merely a laborer engaged in shipyard repairs at an hourly rate. *See* Dkt. #42. Defendants rely on the Supreme Court's ruling in *Desper*, in which a plaintiff who had been hired for a fishing season was killed by an exploding fire extinguisher while painting life preservers for use on his vessel. *See id.* at 6–7 (citing *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187 (1952)). In *Desper*, the Supreme Court found that "while engaged in such seasonal repair work, Desper was not a 'seaman' within the purview of the Jones Act." 342 U.S. at 191.

ORDER - 6

The Supreme Court determined he was, at most, a "probable or expectant seam[a]n" to whom legal seaman status did not apply.

> To be sure, [Desper] was a probable navigator in the near future, but the law does not cover probable or expectant seamen but seamen in being. It is our conclusion that while engaged in such seasonal repair work Desper was not a "seaman" within the purview of the Jones Act.

*Id*. at 190–91 (citations omitted).

In response, Mr. Larrison argues that he was not a "pure shipyard worker," because he had a "handshake deal" with the vessel's Captain to ultimately take the boat tendering. *See* Dkt. #46 at 4. Defendants argue that Mr. Larrison's response is an admission that he is merely an "expectant seaman" not covered by the Jones Act. Dkt. #48 at 3. Defendants explain that while Mr. Larrison claims he reasonably expected employment aboard the F/V Retriever, he was hired to and was performing shipyard work at the time of his injury for Mattsen Management and only would have become a seaman if he signed a contract with RTA for the tendering season and commenced doing that work in furtherance of that mission. *Id*. Defendants do not dispute that F/V Retriever's mission was tendering, but that at the time of Mr. Larrison's injury he was not contributing to that mission—he was contributing to Mattsen Management's role in repairing the vessel prior to tendering operations. The Court agrees and finds that Mr. Larrison was a an "expectant seaman" who was covered under the Longshore and Harbor Workers' Compensation Act, not a seaman under the Jones Act. *See Heise v. Fishing Co. of Alaska,* 79 F.3d 903, 907 (9th Cir. 1996) (holding plaintiff who engaged in repair work aboard vessel moored in the water was merely a land-based worker and thus "was not a seaman entitled to the remedies of the Jones Act," despite his plans to join the vessel's crew when it would later leave port).

ORDER - 7

However, Mr. Larrison also argues that because he was injured while the F/V Retriever was no longer docked, but engaged in sea trials, he was functioning as a crewmember and not a longshoreman. Dkt. #46 at 4. In response, Defendants argue that Mr. Larrison fails to cite any authority that sea trials are a function of a crewmember, not a longshoreman. Defendants further argue that regardless the Court must look to Mr. Larrison's employment as a whole and not simply consider the location of the injury. Dkt. #38 at 3–4. Defendants base this argument on the Supreme Court's ruling in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995). In *Chandris*, the Supreme Court recognized that the mere fact a land-based worker is aboard the vessel when it leaves shore does not convert that worker into a Jones Act seaman:

> Land-based maritime workers injured while on a vessel in navigation remain covered by the LHWCA, which expressly provides compensation for injuries to certain workers engaged in "maritime employment" that are incurred "upon the navigable waters of the United States," 33 U.S.C. § 903(a). Thus, in *Director, Office of Workers' Compensation Programs v. Perini North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983), we held that a worker injured while "working on a barge in actual navigable waters" of the Hudson River, *id.,* at 300, n. 4, 103 S.Ct., at 638, n. 4, could be compensated under the LHWCA, *id.,* at 324, 103 S.Ct., at 651. *See also Parker v. Motor Boat Sales, Inc.,* 314 U.S. 244, 244–245, 62 S.Ct. 221, 222, 86 L.Ed. 184 (1941) (upholding LHWCA coverage for a worker testing outboard motors who "was drowned when a motor boat in which he was riding capsized"). **These decisions, which reflect our longstanding view of the LHWCA's scope, indicate that a maritime worker does not become a "member of a crew" as soon as a vessel leaves the dock.**
> . . . .
> In our view, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Wallace v. Oceaneering Int'l,* 727 F.2d 427, 432 (CA5 1984). The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Chandris*, 515 U.S. at 360–361, 370 (emphasis added). Applying these principles, the Court continues to be convinced that the facts and the law will reasonably support only one conclusion—that Mr. Larrison was at most an "expectant seaman." *See Sanchez v. Smart*

ORDER - 8

*Fabricators of Tex.*, L.L.C., 997 F.3d 564, 573 (5th Cir. 2021) (holding that exposure to perils of the sea alone does not automatically make someone a seaman).  Because Mr. Larrison was a not a seaman, he cannot bring claims under the Jones Act for unseaworthiness, or for maintenance and cure and therefore these claims are dismissed.

**C.  Longshore & Harbor Worker's Compensation Act, 33 U.S.C. § 905(b) Claim**

In their motion, Defendants argue that they have met any legal duties owed to Mr. Larrison under the Longshore & Harbor Worker's Compensation Act, 33 U.S.C. § 905(b).  Dkt. #42 at 9–12.  In his response, Mr. Larrison claims Defendants violated their "turnover duty."  Dkt. #46 at 5.[1]

It is undisputed that as a third-party vessel owner, Defendants owed a duty to turn over "the ship, its equipment, gear and tools, and the work space to be used in stevedoring operations in such condition that an experienced stevedore can by exercising reasonable care carry on its cargo operations with reasonable care."  *Riggs v. Scindia Steam Navigation Co.*, 8 F.3d 1442, 1444 (9th Cir. 1993) (citing *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 167 (1981)).

At issue is whether Defendants met their turnover duty with regard to the vessel's hydraulic crane.  Mr. Larrison alleged in his Amended Complaint that if the hydraulic crane was operable, it would have been used to move heavy cod tendering equipment.  Dkt. #37 ¶ 8.  Because the crane was allegedly inoperable, Mr. Larrison was directed to single-handedly move the heavy equipment himself.  *Id.*  Mr. Larrison alleges that the unreasonable effort required to move the heavy cod tendering equipment caused his injury.  *Id.*  In Mr. Larrison's

---

[1] The Supreme Court outlined the extent of duties owed by a third-party vessel to another shipyard's employees in *Scindia Steam Nav. Co., Ltd. v. De Los Santos,* 451 U.S. 156 (1981).  In their motion, Defendants address a number of these duties, *see* Dkt. #42 at 9–13, however now Mr. Larrison only seems to dispute whether Defendants violated their "turnover duty," *see* Dkt. 46 at 5, therefore the Court has limited its analysis to the "turnover duty."

ORDER - 9

deposition, he stated that the "[y]ou could operate [the crane], but it only had one ram on the boom and it was dangerous, so we decided to lock it out, tag it out." Larrison Dep. at 31:2–4. Defendants do not dispute that the crane was inoperable, and "perhaps even dangerous to an untrained lay person." Dkt. #48 at 6.  However, Defendants argue that they do not have a duty to turn over the vessel completely defect-free, but rather in a condition where an experienced longshore worker could reasonably work around defects (if any).  *Id.* at 5.  Defendants rely on the following analysis from the District of Hawaii opinion in *Haines v. Honolulu Shipyard, Inc.*:

> This is so because *Scindia* states only that the vessel must exercise ordinary care in light of the fact that the operation will be conducted by an "expert and experienced" worker or repair person.  *Scindia*, 451 U.S. at 167.  This implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced worker could safely work around them.  *See Bjaranson*, 873 F.2d at 1208 (determining that the explicit references in *Scindia* and the cases cited by *Scindia* to dangers remaining aboard ship "indicates that a shipowner may leave unremedied conditions that would otherwise be considered unreasonably dangerous to less skilled persons.")  In order to prove that this duty was breached, therefore, a plaintiff must introduce evidence that the hazard was 'such that an expert and experienced stevedore would not 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property.'" *Id*. (citing *Scindia*, 451 U.S. at 167).

125 F. Supp. 2d 1020, 1027-28 (D. Haw. 2000) (granting Government's motion for summary judgment for injury to shipyard repair worker).  In Defendants' motion, they argue that there was no evidence it was not possible to safely move the cod tendering equipment after Mattsen Management made the decision to tag out the crane with an experienced repair company.  Dkt. #42 at 10–11. Defendants do not dispute that it was unsafe for a single person to move the equipment and single-handedly do the work of a hydraulic crane.  *Id.* at 11.  However, they maintain that this unsafe decision was a decision made by Mattsen Management, *id.* at 11 (citing Larrison Dep. at 30:25–32:7), and that Mr. Larrison's injury could have been avoided if more personnel were used or an experienced repair company was hired, *id.* at 10–11.  In his

ORDER - 10

response, Mr. Larrison does not address this argument. *See* Dkt. #46 at 5. As such, the Court considers it undisputed that Mattsen Management's decision to replace the job of a hydraulic crane with one individual was an unsafe decision resulting in Mr. Larrison's injuries. The Court further does not find any evidence that Defendants failed to meet their turnover duty. Ultimately, the Court does not find any genuine factual issue that precludes summary judgment on Mr. Larrison's § 905(b) Claim and therefore dismisses it.

## IV.  CONCLUSION

Having considered the briefing from the parties and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Summary Judgment (Dkt. #42) is GRANTED. All of Plaintiff's claims are DISMISSED with prejudice. All other pending motions are DENIED as MOOT. This case is CLOSED.

DATED this 17th day of January, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 11